UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x
MARVIN ARREAGA,

                         Petitioner,

          - against -

DALE ARTUS, Superintendent, etc.

                         Respondent.
---------------------------------------------------------x

05 Civ. 8154 (CLB)

***Memorandum and Order***

Brieant, J.

      By his Petition filed September 21, 2005 and received at the Pro Se Clerk's Office on August 31, 2005, Mr. Marvin Arreaga, a New York State prisoner, seeks a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254.

      Mr. Arreaga was convicted following a jury trial in Supreme Court Westchester County (Molea, J.) of the crimes of Burglary in the First Degree, Aggravated Sexual Abuse in the Second Degree (two counts) and Sexual Abuse in the First Degree (two counts). The victim was the two year old daughter of a social acquaintance and neighbor.

      He was sentenced to a term of imprisonment of twenty years for the crime of Burglary, ten years for each of the counts of Aggravated Sexual Abuse in the Second Degree and five years for each of the remaining counts, all to run concurrently. On direct appeal, the conviction was affirmed by the Appellate Division of the New York Supreme Court Second Judicial

Department, unanimously on April 18, 2005 (17 A.D. 3d 604). On June 22, 2005, the New York Court of Appeals denied leave to appeal. The Petition is timely.

The grounds asserted in this Petition are: (1) the trial court erred in denying Petitioner's motion to suppress his statement; (2) insufficiency of evidence; (3) reversible error at trial when the Court denied the request of the jury during its deliberations for a translation of the Spanish language *Miranda* form and; (4) excessiveness of sentence.

These claims appear to have been exhausted on direct appeal, where Petitioner's counsel asserted four claims: (1) the trial record was devoid of any evidence that the child suffered substantial pain or physical impairment and thus the conviction for First Degree Burglary should be modified to a lesser included offense, and insufficiency of the evidence; (2) Petitioner's oral statements made subsequent to the *Miranda* warnings were tainted by his earlier statement and should have been suppressed; and (3) the trial court erred in not providing the jury with an official translation of the *Miranda* waiver form as it promised and: (4) that the sentence was excessive in light of Petitioner's intoxication at the time of the offense, his age and lack of a trial record.

Clearly, the excessiveness of a sentence which is within the statutory maximum for the crime of conviction does not present a federal constitutional issue.

The Appellate Division in its affirmance made the following findings and conclusions:

> The hearing court properly denied that branch of the defendant's omnibus
> motion which was to suppress his statements to law enforcement officials.
> The defendant's initial inculpatory statement was not the result of custodial
> interrogation (citations omitted).
>
> Contrary to the defendant's assertion, viewing the evidence in the light most
> favorable to the prosecution (citation omitted), we find that it was legally
> sufficient to establish 'physical injury' beyond a reasonable doubt (citations
> omitted). Moreover, upon the exercise of our factual review power, we are
> satisfied that the weight of the evidence supports the jury's conclusion that
> the complainant suffered a 'physical injury' (citations omitted).
>
> The trial court properly considered objections to the jury's request to obtain
> an official translation of the Spanish-language Miranda form signed by the
> defendant even though the court originally instructed the jury that such a
> translation would be provided (*See* CPL 310.30). Moreover, upon considering
> the parties' arguments, the trial court properly instructed the jurors that they
> were not entitled to hear an official translation by a court interpreter during
> deliberations. To permit the official translation after the close of evidence
> would have deprived the People of the right to cross-examine the court
> interpreter (citations omitted). In any event, there was no evidence that a
> Police Officer's translation was inaccurate (citations omitted).

Based on this Court's review of the record in the state court, the Supreme Court's factual determination that the Petitioner was not in custody prior to the administration of his *Miranda* rights and the Appellate Division's decision in rejecting this claim were neither contrary to nor an unreasonable application of federal law within the mean of AEDPA. The evidence was sufficient in light of *Jackson v. Virginia*, 443 U.S. 309. The subsidiary issue that the verdict was against the weight of the evidence does not rise to a constitutional level in light of the *Jackson* rule.

This Court doubts that the issue of whether the two year old victim suffered "substantial pain," which involves a construction of the New York Penal statute implicates a federal

constitutional issue. In any event, the trial evidence was sufficient. The evidence showed that the child suffered a vaginal tear which would, according to testimony of the witness Dr. Griffith, cause pain to a two year old child and there was eyewitness testimony that the victim cried and screamed at the time of the attack and that redness of the tissues was observed by several witnesses. The statute, Penal Law § 10.00(9) defines physical injury as "impairment of physical condition, or substantial pain." A jury verdict that the facts of this case met the legal requirement of substantial pain is not unreasonable. The New York Courts have held that the purpose of the statute was to set a threshold of something more than a mere technical battery. *See Matter of Philip A.*, 49 N.Y. 2d 198, 200 (1980).

The failure to provide a translation of the *Miranda* waiver was not error and is an issue reasonably governed by state law properly applied by the Appellate Division.

The claims asserted have no merit. The record below viewed as it must be most favorably to the Respondent supports the following findings. Shelly Aguilar, age two, in May of 2002, lived with her mother, Pilar Gabriel, in the ground floor apartment of a multiple dwelling in Port Chester, New York. Petitioner lived on the second floor and had been socially acquainted with Pilar for about a year. He was the nephew of Pilar's brother's ex-wife and Pilar had helped him find work upon his arrival in the United States, and had allowed him to use her telephone to make calls to his family in Guatamala. She saw Petitioner at family functions and he visited her apartment on frequent occasions. Shelly knew who he was, and said his name.

Shortly after midnight on June 3, 2002, Pilar Gabriel was in the bathroom and Shelly, clothed in a diaper and pajamas, was sleeping on Gabriel's bed. The front door was locked. The window in the kitchen area was closed and a fan was situated upright on the window ledge. The lights were on. Pilar heard her daughter screaming. She immediately ran out of the bathroom and saw Petitioner about four or five feet away standing next to the bed holding Shelly, with his pants down about four inches below his waist. She screamed and yelled for the Police. Petitioner dropped the child, pulled up his pants and ran.

Pilar Gabriel observed that her daughter's pajama pants were pulled down. Part of her diaper was ripped and the skin was red in the area of her private parts. The kitchen window was opened and the fan had been knocked on its side. The outside window frame had been bent and damaged, supporting an inference that the Petitioner had entered the apartment through the window. Pilar and her daughter went to the Port Chester Police Department. They arrived at 12:15 A.M. and Pilar Gabriel identified the perpetrator of the crime as "Marvin" and told the Police that he lived on the floor above her. An ambulance arrived at the Police Station at 12:30 A.M. The EMS technician spoke with the child and when he asked her what had happened, she pointed toward her vaginal area. That night the officers located Petitioner in his apartment but made no arrest. A physician at United Hospital examined the child noting a redness in the area of her vagina consistent with the information which had been given about the incident. Photographs were taken and the child was sent to St. Joseph's Hospital in Yonkers to be examined by a specialist in child sexual abuse, Dr. Barbara Griffith. Dr. Griffith detected redness and a fresh tear in the labia minor and injury to the hymenal tissue. She determined that

the tear could have occurred within twenty-four hours and had been caused by some kind of blunt penetrating trauma.

Police in Port Chester learned that Petitioner was employed in a restaurant in Byram, Connecticut immediately across the Byram River from Port Chester. They went there and found Petitioner. A Spanish-speaking Officer explained to Petitioner in Spanish that he had been accused with respect to an incident the night before and asked him to come to Port Chester Police Headquarters with them. Petitioner said that he would. The employer entered the conversation and told Petitioner if he wanted to go, he could and again the Petitioner agreed. He was not in custody nor was he under a physical restraint such as handcuffs and the like. He was allowed to leave the presence of the officers to get something from a friend's room before departing for Port Chester.

A hearing was held April 9, 2003 and concluded on April 14, 2003 before Judge Adler of the Westchester County Court. Petitioner testified through an interpreter claiming he had been handcuffed in Byron and arrested in Connecticut where the arresting officers concededly had no jurisdiction. He admitted signing the *Miranda* form and admitted that he understood the meaning of the Spanish words therein contained and he also acknowledged signing the written statement admitting the crime.

Petitioner's employer testified that he heard the Police ask the Petitioner if he would go

with them voluntarily to Headquarters and that Petitioner agreed to do so and confirmed that he had told the Petitioner that he could go with the Police if he wanted. He also confirmed the testimony of the Officers that Petitioner was neither handcuffed nor restrained in any manner in Byram, Connecticut.

The hearing court found that the Petitioner was not in custody at the time of his encounter with the Police in Byram and that he had voluntarily agreed to accompany the Officers to Headquarters and that he had been adequately advised of and understood his *Miranda* rights and that his waiver was voluntary, knowing and intelligent. The suppression motion was denied and there is no basis to believe that these factual findings of the County Judge were in any way an improper application of federal case law or not based on an adequate factual record. Proof of guilt was overwhelming and Petitioner does not claim actual innocence.

The Petition is denied for want of merit. The Court declines to issue a Certificate of Appealability because no constitutional issue of law requiring judicial review is presented in this case.

The Clerk shall file a final judgment.

X

    X

        X

SO ORDERED.

Dated: White Plains, New York
       November 18, 2005

_____
Charles L. Brieant, U.S.D.J.